UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JALEN THOMAS KELLEY,<br><br>Defendant. | CASE NO: JRR-23-327 |

**GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT EVIDENCE
PURSUANT TO FED. R. EVID. 803(4)**

Comes now the United States of America by its attorneys, Erek L. Barron, United States Attorney for the District of Maryland, Sean R. Delaney and Colleen Elizabeth McGuinn, Assistant United States Attorneys, and moves *in limine* to admit evidence pursuant to Fed. R. Evid. 803(4).

I.  **RELEVANT FACTS**

Kelley is 21 years old and was previously enrolled in his junior year of college at Wingate University in North Carolina.[1] Kelley was raised in Maryland, and attended grade school, middle school, and high school in Harford County. Victim 1, who turned seventeen while on the cruise, met Kelley while on the Carnival Cruise ship, Carnival Legend, that left from the Port of Baltimore, Maryland, on December 26, 2022, and returned on January 2, 2023. Victim 1 first met Kelley in the early morning hours of January 1, 2023, after a New Years Eve Party that was held on the cruise ship. Kelley initially introduced himself with various names, including "Brendon" but later used the name "Jay."

On the evening of January 1, 2023, Victim 1 needed to use the restroom, and Kelley stated he would take Victim 1 to the bathroom. Victim 1 used the bathroom in Kelley's cabin and upon exiting the bathroom, Kelley pushed Victim 1 down onto the bed, face first, and forced Victim 1

---

[1] Kelley will be 22 years old at the time of trial.

2

to have sexual intercourse. Victim 1 attempted to push Kelley off her by reaching back with her arms but was unsuccessful. After raping Victim 1, Kelley asked, "you good?" Immediately following, Victim 1 pulled up her pants and exited the room. Victim 1 disclosed the rape to her brother and other witnesses on the cruise ship within the first hours after the assault occurred. The cruise ship returned to Baltimore the following morning, January 2, 2023. Victim 1 exited the ship and returned to her home in Virginia. That evening she reported to her parents what happened and subsequently reported it to the police.

Victim 1 was referred to a local hospital to have a Sexual Assault Nurse Examiner (SANE) exam conducted (formerly known as a SAFE exam). That exam indicated several bruises on Victim 1's extremities, including an oval 1cm by 0.75 cm light purple bruise on her right wrist/forearm, and bruises on her shins where Victim 1 stated she was pushed against Kelley's bed. The exam also revealed vaginal abrasions, tearing, and bruising. The nurse, Renee Pullen, wrote a report that included statements made by Victim 1 during the course of her medical treatment by Ms. Pullen. *See* Gov Ex. A, attached. Victim 1's statements included that she was in pain during certain portions of the examination and Victim 1's description of the assault. Specifically, Victim 1 described being pushed face down on the bed in her assailant's room, feeling his penis in her vagina, and that he held her arms during the assault. Victim 1 described being freaked out and frozen. Victim 1 stated that her assailant rubbed her genitals with sheets after it was over, and that she later took a shower and then a bath prior to the medical exam. Victim 1 did not think her assailant wore a condom and was unsure if he ejaculated or not. Victim 1 was also able to provide a description of her assailant: "He had earrings. I hit him. He was black. He's way bigger than me." She described him as having no facial hair with a military style haircut. Her assailant was not someone she knew or had regularly seen while on the cruise.

Ms. Pullen documented the injuries that she noted both in her "head to toe" examination of Victim 1 as well as her internal examination. A series of blood work and testing was ordered for sexually transmitted infections (STI's), pregnancy, and other concerns, and appropriate medical treatment and medication were provided. Ms. Pullen also documented and collected potential evidence in the form of photographs and swabs.

During the investigation, FBI agents boarded the cruise ship and the room where Kelley stayed. Measurements and photographs were taken of the metal bed rail around the bedframe on the ship. The height of the metal rail is consistent with the bruises on Victim 1's shins that are seen in the sexual assault exam.

On April 18, 2023, Kelley was interviewed by the FBI at Wingate University. Kelley was told he was free to leave the room at any time. FBI agents discussed why they were there. Kelley stated that Victim 1 had said she needed to use the bathroom, and he offered to let her use his because his bathroom was the closest. Kelley assumed Victim 1 was under the influence because of how she was acting, but stated he was not under the influence of anything. Kelley confirmed that the night of January 1, 2023, was the first night he met Victim 1 and stated that they were kissing and touching outside of the room at the door to his room. Victim 1 used the bathroom, and they left without any further physical interaction. Kelley said after Victim 1 used the bathroom he made sure everything was "cool" and when asked what he meant by that he stated he said "ok – you good, use the bathroom, okay let's go." Kelley was asked if any other contact happened between them inside the room, he responded "No, sir, um, if anything, me being the person that I am, I guess, I made sure that happened before we went inside the room, again kissing on my neck, rubbing and touching on me, my hands are nothing but, on her waist, right outside the door." At the conclusion of the interview, Agt. Walker served the search warrant for Kelley's person as well

as his iPhone. Two buccal swabs from Kelley's mouth were obtained, and his iPhone 14+ was also seized. Kelley then departed from the interview to attend his next class.

On June 16, 2023, Agt. Walker applied for and received a search warrant for the iCloud account belonging to Jalen Kelley (jalenkelley33@icloud.com). That warrant was reviewed and signed by Magistrate Judge A. David Copperthite. Several months later, on September 20, 2023, the Defendant was arrested at Wingate University based upon this Indictment (ECF 1).

## II.  LAW AND ANALYSIS

The Government seeks to admit evidence of Victim 1's statements to nurse Renee Pullen made during a sexual assault nurse examination (SANE) conducted on January 2, 2023, pursuant to Rule 803(4). This rule creates a hearsay exception for "statements made for the purposes of medical diagnosis or treatment." Fed. R. Evid. 803(4); *see also United States v. Griffith*, 65 F.4th 1216 (10th Cir. 2023) (*quoting United States v. Joe*, 8 F.3d 1488, 1493 (10th Cir. 1993)).

The two-part test for admitting these statements is: "(1) the declarant's motive in making the statement must be consistent with the purposes of promoting medical treatment, and (2) the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis." *Morgan v. Fortich*, 846 F.2d 941, 949 (4th Cir. 1988)(quoting *United States v. Renville*, 779 F.2d 430, 436 (8th Cir. 1985). This exception is not restricted to statements to physicians but also includes social workers, nurses, and other third parties. *See United States v. Kappell*, 418 F.3d 550, 556 (6th Cir. 2005); *United States v. Bercier*, 506 F.3d 625, 630 (8th Cir. 2007); *United States v. Chaco*, 801 F.Supp2d 1200, 1210-1213 (D.N.M. 2011); and *United States v. Griffith*, 65 F.4th 1216 (10th Cir. 2023).

"This exception to the hearsay rule is premised on the notion that a declarant seeking treatment 'has a selfish motive to be truthful' because the effectiveness of the medical treatment

depends on the accuracy of the information provided." *Willingham v. Crooke*, 412 F.3d 553, 561-62 (4th Cir. 2005) (quoting Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 803.06[1](Joseph M. McLaughlin, ed., 2d ed. (2004)); *see Renville,* 779 F.2d at 436 ("It is assumed that a patient has a strong motive to speak truthfully and accurately because the treatment or diagnosis will depend in part upon the information conveyed. The declarant's motive thus provides a sufficient guarantee of trustworthiness to permit an exception to the hearsay rule.")

Here, Ms. Pullen provided treatment to Victim 1 for her physical injuries as well as potential consequences from unprotected sex such as pregnancy, STI's, emotional or mental health concerns, etc. All of Victim 1's statements about the rape event itself are exceptions to the hearsay rule under 803(4). Admission of Victim1's statements to Ms. Pullen do not violate Kelley's right to confrontation as the statements were non-testimonial[2] and Victim 1 will testify during the Government's case-in-chief.

## CONCLUSION

For all of the foregoing reasons, the United States respectfully requests that this Court grant the Government's motion and admit evidence pursuant to Fed. R. Evid. 803(4).

Respectfully submitted,

Erek L. Barron
United States Attorney

By: ___/s/_____
Sean R. Delaney
Colleen Elizabeth McGuinn
Assistant United States Attorneys

---

[2] The United States Supreme Court has held that statements to physicians in the course of receiving treatment would not be excluding by the Confrontation Clause under *Crawford v. Washington,* 541 U.S. 36 (2004). *See Giles v. California* 554 U.S. 353 (2008).